IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNSTOPPABLE DOMAINS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-948 (CFC) |
| | ) | |
| GATEWAY REGISTRY, INC., | ) | |
| JAMES STEVENS and DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR A TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>**

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | Jack B. Blumenfeld (#1014) |
| | Michael J. Flynn (#5333) |
| | 1201 North Market Street |
| | P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE 19899 |
| | (302) 658-9200 |
| Andrew D. Skale | jblumenfeld@morrisnichols.com |
| MINTZ LEVIN COHN FERRIS | mflynn@morrisnichols.com |
| GLOVSKY & POPEO | |
| 3580 Carmel Mountain Rd., | *Attorneys for Plaintiff* |
| Suite 300 | |
| San Diego, CA 92130 | |
| (858) 314-1500 | |

July 29, 2022

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ...................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS.........................................2

III.     STATEMENT OF FACTS ......................................................................3

     A.     Unstoppable's .WALLET Top-Level Domain .................................3

     B.     Defendants' Infringing .WALLET Domains ....................................7

IV.     ARGUMENT.........................................................................................10

     A.     Legal Standards ..............................................................................10

     B.     Unstoppable is Likely to Succeed on the Merits...............................11

         i.     Trademark Infringement .........................................................11

         ii.     Unfair Competition ................................................................14

         iii.     Intentional Interference with Contractual Relations................16

         iv.     Intentional Interference with Prospective Business Relationships....................................................................17

     C.     Unstoppable Will Be Irreparably Harmed in the Absence of a Preliminary Injunction....................................................................18

     D.     The Balance of Equities Strongly Favors Unstoppable .....................20

     E.     The Requested Relief Serves the Public Interest ...............................21

V.     CONCLUSION.....................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&H Sportswear v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000) ........................................................................11, 12

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
726 F.3d 1296 (Fed. Cir. 2013) ...........................................................................19

*Bambu Sales, Inc. v. A&M Distributing*,
1988 U.S. Dist. LEXIS 6455 (D.N.J. June 29, 1988)...........................................14

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)...............................................................................................15

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) ..............................................................................19

*Dunlap v. State Farm Fire and Cas. Co.*,
878 A.2d 434 (Del. 2005) .....................................................................................16

*Ford Motor Co. v. Summit Motor Prod., Inc.*,
930 F.2d 277 (3d Cir. 1991) .................................................................................12

*Fotomat Corp. v. Photo Drive-Thru, Inc.*,
425 F. Supp. 693 (D.N.J. 1977) ............................................................................15

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
774 F.3d 192 (3d Cir. 2014) .................................................................................10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ...............................................................................16

*Image Online Design, Inc. v. Internet Corp. for Assigned Names &
Numbers*,
2013 U.S. Dist. LEXIS 16896 (C.D. Cal. Feb. 7, 2013) ......................................14

*Interpace Corp. v. Lapp, Inc.*,
721 F.2d 460 (3d Cir. 1983) .................................................................................12

*Issa v. Sch. Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017) ..........................................................................20, 21

*Keurig, Inc. v. Sturm Foods, Inc.*,
  2012 WL 4049799 (D. Del. 2012)......................................................................11

*Kimbleton v. White*,
  2014 U.S. Dist. LEXIS 123091, 2014 WL 4386760 (D. Del. Sept.
  4, 2014) *aff'd*, 608 F. App'x 117 (3d Cir. 2015) ................................................17

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ..............................................................................11

*Lipson v. Anesthesia Servs., P.A.*,
  790 A.2d 1261 (Del. Super. 2001)......................................................................17

*Military Certified Residential Specialist LLC v. Fairway Indep.
  Mortgage Corp.*,
  251 F. Supp. 3d 750 (D. Del. 2017)....................................................................12

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck
  Consumer Pharm. Co.*,
  290 F.3d 578 (3d Cir. 2002) .........................................................................19, 20

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
  920 F.2d 187 (3d Cir.1990) .........................................................................11, 12

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ........................................................................10, 11

*Rsch. Found. of State Univ. of New York v. Mylan Pharms. Inc.*,
  C.A. No. 09-184-GMS-LPS, 2010 WL 11475865 (D. Del. July 6,
  2010) ...................................................................................................................19

*Smith v. Laster*,
  787 F. Supp. 2d 315 (D. Del. 2011)....................................................................10

*Taussig v. Wellington Fund, Inc.*,
  187 F. Supp. 179 (D. Del. 1960)........................................................................15

*United States PTO v. Booking.com B.V.*,
  140 S. Ct. 2298 (2020)........................................................................................13

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).............................................................................................10

*World Energy Ventures, LLC v. Northwind Gulf Coast LLC*,
    2015 Del. Super. LEXIS 588 (Del. Sup. Ct. 2015) ..........................................18

**Rules and Statutes**

6 Del. C. § 2532 ...............................................................................................2, 11, 15

15 U.S.C. § 1114 ...........................................................................................................11

15 U.S.C. § 1125(a) .......................................................................................................2

15 U.S.C. § 1125(a)(1)(A) ...........................................................................................11

## I.    INTRODUCTION

Plaintiff Unstoppable Domains Inc. ("Unstoppable") respectfully moves this Court to enter a temporary restraining order and a preliminary injunction to stop Defendants Gateway Registry, Inc. ("Gateway"), James Stevens ("Stevens") (collectively, "Defendants"), and those acting in concert with them, from using, promoting, offering for sale, and/or selling Gateway's unauthorized .WALLET top-level domain names in violation of Unstoppable's trademark and other rights. Defendants' ongoing infringement, intentional interference with Unstoppable's customer relationships, and unfair competition, irreparably harm Unstoppable, its tens of thousands of customers who have purchased legitimate .WALLET domain names from Unstoppable, hundreds of Unstoppable partners, and the general public, all of whom require assurance that electronic payments and internet traffic are accurately routed.

Imagine that someone attempted to create an alternate universe of street addresses, in which they intentionally sold the address "844 North King Street, Wilmington, DE" to some third party, such that it did not correspond to this courthouse, but to a different location entirely (knowing the address already pointed to this courthouse).  Imagine further that when one searched for "844 North King Street, Wilmington, DE" on the internet, the only thing determining which location was revealed to the searcher was the type of computer used to run the search.  This

is the exact kind of chaos that Defendants are creating with the counterfeit .WALLET domain names that they are offering for sale, despite Plaintiff's already being the exclusive provider of .WALLET domain names.

To be clear, Unstoppable does not seek to prevent Defendants from selling the other top-level domains it offers (or infinite others it could sell) – just the identical .WALLET domain names that Unstoppable has been selling for more than a year, and which Defendants just began offering less than a month ago.  Indeed, Defendants have boasted of their intention to target Unstoppable's .WALLET domain names specifically, as part of a deliberate campaign effort to "smash" Unstoppable's business model.  But it is not only Unstoppable's business model that is at risk:  In Defendants' own words, their goal is to turn the market for these domains into the "the Wild West" – one with no oversight, no consistency, and no reliable guarantees against fraud.  Obviously, that is not a market that works for customers or the public.

To prevent Defendants' vision of chaos from becoming reality, the Court should issue the temporary restraining order and preliminary injunction sought by Plaintiff.

## II.     NATURE AND STAGE OF PROCEEDINGS

Unstoppable filed its Complaint on July 19, 2022, asserting claims for (1) common law trademark infringement; (2) unfair competition under 15 U.S.C. § 1125(a); (3) unfair competition under Delaware law, including the Delaware

Deceptive Trade Practices Act, 6 Del. C. § 2532; (4) intentional interference with contractual relations; and (5) intentional interference with prospective business relationships.  D.I. 1.  Unstoppable emailed a copy of the Complaint to Defendant James Stevens, Gateway's CEO and founder, on July 20, 2022.[1]  Defendants Gateway and Stevens were formally served with the Complaint on July 21, 2022, through Gateway's registered agent in Delaware.  D.I. 5, 6.

## III.  STATEMENT OF FACTS

### A.  Unstoppable's .WALLET Top-Level Domain

Unstoppable Domains, founded in 2018, is a software company and blockchain domain name provider that allows individuals and entities to purchase decentralized domain names that are minted as a non-fungible token ("NFT") on the Ethereum blockchain.[2]

Domain names are used to direct an internet user to a specific server on the internet, by translating the domain name (e.g., apple.com) to the underlying IP address of the requested server through a global network of servers that form the

---

[1]    Although Mr. Stevens has not responded to this email, he has retweeted posts on Twitter discussing the lawsuit, demonstrating that he, and therefore Gateway, are aware of the Complaint.

[2]    Ethereum is a decentralized, open source blockchain "technology for building apps and organizations, holding assets, transacting and communicating without being controlled by a central authority."  https://ethereum.org/en/what-is-ethereum/.

Domain Name System ("DNS"). Kam Decl., ¶ 2.[3] For example, when a user types the domain name apple.com into her browser, the DNS directs that request to the specific name servers that host Apple's website, which in turn translate that to the specific IP address for the Apple servers (e.g., 17.254.0.91) and direct the user's browser to that server. *Id.* Traditional domain names, such as those ending with a top-level domain ("TLD") of .com or .org, are controlled by a central registry, ICANN. *Id.* ¶ 3. This central registry ensures that each domain name is unique. *Id.* That is, there can only be one domain registered as apple.com. Otherwise, the DNS would not know where to send requests for that domain. *Id.*

Decentralized domain names, such as NFT blockchain domain names offered by Unstoppable, do not rely on a centralized registry. *Id.* ¶ 4. Nor has a government appointed agency, like ICANN, been setup to ensure each NFT blockchain domain name is sold by only one entity. Instead, this new type of domain name relies on a public blockchain that offers a level of transparency and security that traditional domain names cannot offer by giving the owner of the NFT domain names complete control over her stored data. *Id.* An additional benefit of NFT domain names is that they simplify cryptocurrency transactions by allowing a user to use the NFT domain

---

[3]   "Kam Decl." and Exhibits 1-6 refer to the Declaration of Bradley Kam, co-founder and Head of Strategy for Unstoppable, filed concurrently.

names to engage in such transactions, instead of having to use a complete cryptocurrency address that could consist of more than 40 numbers and letters. *Id.*

Since its founding, Unstoppable has registered more than 2.4 million NFT domain names, becoming the leading provider of NFT domain names on the blockchain. *Id.* ¶ 5. Starting in June 2021, Unstoppable became the first domain registry to offer the .WALLET domain for purchase by users, and has since sold and registered over 320,000 unique domain names having the .WALLET TLD to tens of thousands of users. *Id.* Unstoppable's .WALLET domain names allow users not only to set up websites on the decentralized web, but also allows users to receive over 275 supported crypto coins and tokens with ease, regardless of the blockchain network. *Id.*

As with traditional domain names, it is critical that each .WALLET domain name is unique, to prevent the misdirection of a user's request for access to a .WALLET website, or worse, the transfer of cryptocurrency funds to an unintended recipient. *Id.* ¶ 6. Because there is no central authority ensuring that no two users register the same .WALLET address, and because there is no technical bar to prevent competing registries from offering the same NFT domain name, the NFT domain name registries rely on a first-come, first-served basis for providers of such domain names. That is, once a registry has begun offering a specific NFT top-level domain name such as .WALLET, no other domain name registry can or should register

.WALLET domain names.  This is similar to how trademarks work – once a company creates restaurants called McDonald's, no one else should be naming their restaurants McDonald's.

By being the first to offer .WALLET domain names for sale in June 2021, Unstoppable was necessarily also the first to make commercial use of the mark.  To further secure its exclusive rights in the .WALLET domain, Unstoppable filed a trademark application with the U.S. Patent and Trademark Office for its WALLET trademark, U.S. Serial No. 90/886,517, which is currently pending.  *Id*. ¶ 22. Unstoppable's trademark application covers "domain name registration services," as Unstoppable uses its WALLET trademark to sell its .WALLET domain names.  *Id*.

Unstoppable's .WALLET domain names have generated over $5,000,000 in revenue for the company since June 2021.  *Id*. ¶ 7.  And Unstoppable has spent a substantial amount of money promoting its .WALLET domain names, which have become closely identified with Unstoppable, and represent substantial, valuable goodwill to Unstoppable.  *Id*. ¶ 7.  Unstoppable has also developed contractual and business relations with hundreds of partner applications with whom it contracts to build and provide support for its .WALLET registry and its partners agree to complete an integration, making it possible to use Unstoppable's domain names on these partner applications.  *Id*. ¶ 8.

Until July 4, 2022, when Defendants began offering their own .WALLET domain names, Unstoppable was the only domain name registry offering .WALLET domain names.  *Id*. ¶ 9.  By then, .WALLET domains were already exclusively associated with Unstoppable in the minds of consumers – in other words, if you told someone your website is Delaware.WALLET, it was understood that you meant *Unstoppable's* version of Delaware.WALLET.  *Id.* ¶¶ 9-10, Ex. 1.

Currently, however, whether a request for a given .WALLET domain name returns Unstoppable's version or Defendants' version depends solely on what application is being used to initiate the request – an entirely untenable state of affairs. *Id*. ¶ 17.

## B.  Defendants' Infringing .WALLET Domains

On or about July 4, 2022, with full knowledge that Unstoppable had been offering .WALLET domain names for more than a year and had sold hundreds of thousands of .WALLET domains to Unstoppable customers, Gateway began offering its own competing .WALLET domains on its website gateway.io.  *Id*. ¶¶ 11-12. Demonstrating its intent to target Unstoppable specifically, Gateway offers its .WALLET domains at a fraction of the price of its other domain name offerings. *Id.* ¶ 13, Ex. 2.

7



On July 8, 2022, Unstoppable Domains wrote to Gateway demanding that Gateway cease selling or offering for sale .WALLET domain names. *Id*. ¶ 15. Although Gateway acknowledged receiving Unstoppable's demand letter, it did not cease or desist; instead, Gateway's founder and CEO, Defendant James Stevens, immediately took to Twitter to boast of his intention to continue infringing Unstoppable's trademark rights in an effort to put Unstoppable out of business. *Id.* ¶ 15, Ex. 3.



Thus, Stevens has publicly admitted that he intends to continue infringing Unstoppable's WALLET mark in the hopes of "smash[ing]" Unstoppable's business model. *Id.* Indeed, in a direct conversation with an Unstoppable co-founder, Bradley Kam, Stevens told Mr. Kam that he viewed the market for NFT domains as "the Wild West," and suggested that Mr. Kam simply "f*** off." *Id.* ¶ 14.

8

Gateway also colorfully promotes its .WALLET domains by, among other things, automatically posting to Twitter each time it registers a new .WALLET domain. *Id.* ¶ 20, Ex. 5.



Since launching its infringing .WALLET domains, Gateway is believed to have registered approximately 4,000 .WALLET domains as of this filing. *Id.* ¶ 20.

Although Gateway has not formally acknowledged or responded to Unstoppable's Complaint in this action, Defendant Stevens has "re-Tweeted" a number of posts discussing this lawsuit, even taunting this Court to act. *Id.* ¶ 16, Ex. 4.



## IV.   ARGUMENT

### A.   Legal Standards

Injunctive relief in the form of a temporary restraining order or preliminary injunction is appropriate if (1) Unstoppable is likely to succeed on the merits; (2) Unstoppable is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the party's favor; and (4) an injunction is in the public interest.  *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Smith v. Laster*, 787 F. Supp. 2d 315, 318 (D. Del. 2011) ("The [injunction] elements also apply to temporary restraining orders.").  Of these four factors, the first and second are the "most critical."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  If the movant satisfies these factors, the Court then considers

the balance of equities and public interest factors to determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*.

Notably, "one of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990)). Here, the "last, peaceable, noncontested status of the parties" was before Gateway began selling .WALLET domain names, on or about July 4, 2022.

## B.   Unstoppable is Likely to Succeed on the Merits

### i.   Trademark Infringement[4]

To succeed on its claim for trademark infringement, Unstoppable need only demonstrate that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (also noting that courts "measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards."). In determining the likelihood of

---

[4]   Unstoppable's claim for unfair competition under Delaware law, 6 Del. C. § 2532, is reviewed under the same standard as trademark infringement. *Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 4049799 (D. Del. 2012).

confusion, courts in the Third Circuit need not consider the ten factors set forth in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983) (the "*Lapp* factors"), when the marks are identical and the products are directly competing, which is the case here. *A&H Sportswear*, 237 F.3d at 214 (citing *Opticians Ass'n of Am.*, 920 F.2d at 195)). When a mark has not yet been federally registered, "'validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.'" *Military Certified Residential Specialist LLC v. Fairway Indep. Mortgage Corp.,* 251 F. Supp. 3d 750, 756 (D. Del. 2017) (quoting *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)).

There can be no genuine dispute that Unstoppable possesses trademark rights in the WALLET mark, and that Defendants' use of the mark is likely (and intended) to cause confusion. Unstoppable was the first to use and promote the WALLET mark using its .WALLET domains in commerce, with its first use in interstate commerce no later than June 2021. Kam Decl., ¶ 4. Since then, it has extensively used the mark over the internet and nationwide to market and sell its .WALLET domain names, which have generated over $5,000,000 in revenue in just over a year, and has invested heavily in promoting .WALLET domain names. *Id*. ¶ 7.

Unstoppable also applied for registration of the service mark WALLET, on August 17, 2021 – long before Gateway or anyone else began using the mark.[5]

As demonstrated by the tens of thousands of users who have purchased over 320,000 .WALLET domain names from Unstoppable, as well as by the surprise and confusion with which the market greeted the launch of Defendants' .WALLET domains, the WALLET mark has gained widespread recognition, and it is associated exclusively with Unstoppable in the minds of consumers.  These users, as well as their own customers and business partners, depend on the assumption that when someone wishes to access or direct payments to those users' .WALLET domain names, they will reliably be able to access or direct payments to Unstoppable's version of those domain names.  The foundation for this assumption is the widespread understanding among consumers that a .WALLET domain *means* Unstoppable's version of such domains.  *See United States PTO v. Booking.com B.V.*, 140 S. Ct. 2298, 2304 (2020) (holding that whether a mark is eligible for trademark protection turns on whether the mark "signifies to consumers" a specific source of goods or services).[6]

---

[5]    As noted above, Unstoppable's trademark covers "domain name registration services" – a type of service that has long been eligible for trademark protection. *See, e.g.*, USPTO Reg. No. 6,195,428 (registering the "GODADDY" trademark for class of services including "domain name registration services").

[6]    The close association in the minds of consumers between .WALLET domain names and Unstoppable distinguishes this case from older, pre-NFT cases indicating

Indeed, if consumer perception were otherwise, then Unstoppable would not have been able to achieve success on the scale that it has in marketing its .WALLET domains.  It is for precisely this reason that many of Unstoppable's customers were shocked to discover that Gateway was attempting to market unauthorized .WALLET domains.  Kam Decl., ¶ 21.

Because (1) the WALLET mark has acquired secondary meaning in the context of domain name registration services, (2) Defendants are indisputably using an identical mark, and (3) customer confusion already abounds, Unstoppable is likely to prevail on its claim for common law trademark infringement.

    ii.   Unfair Competition

Putting aside its trademark rights, Unstoppable's claims for unfair competition stand on their own.  *See, e.g.*, *Bambu Sales, Inc. v. A&M Distributing*, 1988 U.S. Dist. LEXIS 6455, at \*9 (D.N.J. June 29, 1988).  They require only proof that Defendants' business practices are likely to cause "confusion as to [the] source"

---

that TLDs are "generally" not considered to be "source indicators."  *E.g.*, *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 U.S. Dist. LEXIS 16896, at \*21 (C.D. Cal. Feb. 7, 2013); *see also id.* (noting that trademark protection would likely extend to a new, unique top level domain that functioned as a "source indicator").  Additionally, unlike Unstoppable, the plaintiff in *Image Online* had not applied to register its WEB mark for "domain registration services," which Unstoppable has done here.  *Image Online* also concerned a suit against ICANN – the very entity "authorized by the United States government to administer the Internet's primary domain name system," *id.* at \*1 – whereas for NFT blockchain domain names, no such entity exists.

of the .WALLET domains sold by Defendants. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989); *see also Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F. Supp. 693, 708 (D.N.J. 1977) ("The essence of unfair competition is the sale of one's own goods for those of another person. . . .  [Thus,] [i]t is possible to be guilty of unfair competition even when trademark infringement is not present, if use of a similar but noninfringing mark or device is combined with unfair practices in a manner which is likely to deceive purchasers regarding the origin of goods under all the circumstances."); 6 Del. C. § 2532(a) (prohibiting, *inter alia*, "[p]ass[ing] off goods or services as those of another"; "[c]aus[ing] [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; "[c]aus[ing] [a] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another"; and "any other conduct which similarly creates a likelihood of confusion or of misunderstanding").

In this case, Defendants are selling domain names that are identical to Unstoppable's without taking steps to advise consumers that they are not managed by Unstoppable, are not affiliated with Unstoppable, and are not authorized by Unstoppable.  That is textbook unfair competition. *See, e.g.*, *Taussig v. Wellington Fund, Inc.*, 187 F. Supp. 179, 200 (D. Del. 1960) (noting that the "ultimate offense"

in unfair competition claims "always is that defendant has passed off his goods as and for those of the complainant").

    iii.    Intentional Interference with Contractual Relations

Defendants have indisputably interfered with Unstoppable's contracts with its customers.  The elements an intentional interference claim are (1) a contractual relationship; (2) the defendant's general knowledge of the contractual relationship; (3) an intentional act that is a significant factor in causing a breach or disruption of the contract; (4) lack of justification; and (5) resulting injury.  *See, e.g.*, *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

Here, Unstoppable has contractual relationships with the more than 320,000 customers who have purchased a .WALLET domain name from Unstoppable. Defendants not only have knowledge of these of these relationships, but have admitted to deliberately targeting Unstoppable's customers through the creation of unauthorized .WALLET domains as part of a coordinated campaign to "smash[]" Unstoppable's business model.  Defendants have no justification for their conduct, aside from a desire to cause injury to Unstoppable and its customers – a goal that they have indisputably already achieved.

Accordingly, Unstoppable is likely to succeed on its claim for intentional interference with contractual relations.  *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, at *24, 31 F.4th 1180 (9th Cir. 2022) (granting preliminary injunction where, as a

result of defendant's intentional conduct, the plaintiff would "likely be unable to deliver its services to its existing customers as promised").

      iv.   Intentional Interference with Prospective Business Relationships

The elements of a claim for intentional interference with prospective business relationships are (1) a reasonable probability of a business opportunity; (2) intentional interference with that opportunity; (3) proximate causation of the interference by the conduct of the defendant; and (4) damages. *See, e.g.*, *Kimbleton v. White*, 2014 U.S. Dist. LEXIS 123091, 2014 WL 4386760, at *8 (D. Del. Sept. 4, 2014) *aff'd*, 608 F. App'x 117 (3d Cir. 2015) (applying Delaware law); *id.* at *24 ("Delaware law permits a broad range of legitimate business expectancies, including the prospect of . . . [any] relations leading to potentially profitable contracts.") (internal quotation marks omitted); *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1286 (Del. Super. 2001) (permitting claim to proceed where "the prospective relations with these surgeons and patients could have yielded profitable contracts in the form of claims for reimbursement for services rendered with respect to these patients").

Here, in addition to disrupting existing contracts between Unstoppable and its customers, Defendants' intentional and unjustified conduct described above has caused, and is likely to continue to cause, existing and prospective customers not to purchase new .WALLET domain names from Unstoppable.  Unstoppable is

17

therefore likely to succeed on its claim for intentional interference with prospective business relationships. *See, e.g.*, *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 Del. Super. LEXIS 588, at *25-29 (Del. Sup. Ct. 2015) (holding that actionable interference could be inferred where the defendant's conduct likely deterred plaintiff's prior investors from making further investments).

### C. Unstoppable Will Be Irreparably Harmed in the Absence of a Preliminary Injunction

Defendants' continued use of .WALLET domain names and the WALLET mark has irreparably harmed, and will continue to irreparably harm, Unstoppable and its customers. Defendants' use of the identical WALLET mark for the same service to the same class of customers and potential customers is already causing confusion in the marketplace and deceiving consumers into believing that Gateway's .WALLET domains and Unstoppable's .WALLET domains will be interchangeable and compatible, which they are not. Kam Decl., ¶¶ 17-19, 21.

Every .WALLET domain registered by Gateway runs the risk that the same domain will be, or has been, registered by Unstoppable, causing chaos for users and preventing the domain registry system from functioning as intended. This irreparably harms Unstoppable by undermining users' confidence in Unstoppable's .WALLET domains, which will inevitably cause customers not to register or continue to register such domains with Unstoppable, until users can be sure that they own the one and only specific .WALLET domain they need to register.

As a result of Defendants' unlawful actions, Unstoppable will lose market share, brand recognition, goodwill, suffer harm to its reputation as the leading NFT domain registry, and suffer price erosion from Gateway's undercutting of Unstoppable's pricing. *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)) ("[P]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("We are satisfied that this loss of market share constitutes irreparable harm."); *Rsch. Found. of State Univ. of New York v. Mylan Pharms. Inc.*, No. 09-184-GMS-LPS, 2010 WL 11475865, at *13 (D. Del. July 6, 2010) ("Depending on circumstances, evidence of price erosion, loss of market share, loss of profits, . . . may constitute irreparable harm.").

In addition, consumers across the globe have already begun blaming *Unstoppable* for the chaos caused by Defendants' unauthorized registration of .WALLET domain names.  As just one example, Unstoppable recently received a legal demand letter from an individual who purchased .WALLET domain names from Gateway, in which the individual threatened to sue Unstoppable for nearly $900,000 for selling .WALLET domain names that were not authorized *by Gateway*.

*See* Kam Decl., Ex. 6.  This type of harm will only increase exponentially without an injunction.

Unless this Court immediately stops Defendants from continuing to offer .WALLET domains, their unlawful actions will continue to undermine Unstoppable's reputation, expose Unstoppable to misguided lawsuits, jeopardize its business model, and altogether threaten to wreak havoc on the global market for NFT domains.

### D.   The Balance of Equities Strongly Favors Unstoppable

The balance of equities favors granting Unstoppable's application for a temporary restraining order and preliminary injunction.  *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) ("We must now balance the parties' relative harms; that is, the potential injury to the [movant] without this injunction versus the potential injury to the [respondent] with it in place.") (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)).  As detailed above, Unstoppable and its tens of thousands of customers will be irreparably harmed unless Defendants are enjoined from selling competing .WALLET domains.

Defendants, in contrast, will not be significant harmed by a temporary restraining order: Whereas Unstoppable has already registered the over 320,000 .WALLET domains, Defendants have registered just 3,978 such domains since

launching in early July.[7]  Based on their $1.99 registration fee, that represents just $7,819 in revenue for Gateway, versus the over $5,000,000 in revenue generated by Unstoppable for .WALLET registrations.   Moreover, an injunction would not prevent Gateway from selling any of the other NFT domains it offers, or from adding any other unique NFT domains to its offerings (of which there are infinite combinations).  An injunction merely returns the parties to the position they were in before Gateway launched its .WALLET domain less than a month ago.

Accordingly, the balance of the equities strongly favors Unstoppable.

### E.    The Requested Relief Serves the Public Interest

The public interest is served by granting Unstoppable's request for a temporary restraining order and preliminary injunction.  *Issa*, 847 F.3d at 143 ("Finally, we must weigh whether the public interest favors this preliminary injunction.   Doing so is 'often fairly routine.'   If a [movant] proves 'both' a likelihood of success on the merits and irreparable injury, it 'almost always will be the case' that the public interest favors preliminary relief.") (citations omitted).  The

---

[7]      Gatweway's registrations of .WALLET domains have declined considerably since its initial launch on July 4, 2022.  In the first week of offering .WALLET domains (July 4-9), Gateway tweeted that it registered 3,492 such domains. https://twitter.com/HandshakeSLDs /status/1546135910009430016.  For the week of July 10-16, it reported registering 415 .WALLET domains. https://twitter.com/HandshakeSLDs/status/1548672628138950656.  For the week of July 17-24, Gateway registered 71 .WALLET domains. https://twitter.com/HandshakeSLDs/status/1551209340929032195.

public has a strong interest in maintaining a functioning NFT blockchain domain name system, free from the anarchy that results from competing registrations of the same domain name being sold by multiple parties. This is especially true here, as NFT domains do not rely on a central registry to resolve any such conflicts. Confidence in the entire decentralized domain name industry will be substantially diminished if Defendants can continue registering .WALLET domains, which deprives the public of a viable alternative to the traditional domain names offered by ICANN.

Moreover, failure to enjoin Defendants will only encourage more entrants to create .WALLET domain names or other NFT blockchain domain names that are already taken. Without an injunction here, a third, fourth, or fifth entity could start offering .WALLET domain names, and perhaps many more. This would cause irreparable chaos and havoc to a system that, up until now, had been running smoothly and self-regulating. To prevent this entire NFT blockchain domain name system from collapsing, an injunction against Defendants is necessary and required.

## V.    CONCLUSION

For the foregoing reasons, Unstoppable respectfully requests that the Court grant its motion for a temporary restraining order and preliminary injunction ordering Defendants, their agents, and all those acting in concert with them or at

their direction to immediately stop selling, offering, or otherwise promoting .WALLET domain names.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)

OF COUNSEL:                             Michael J. Flynn (#5333)
                                        1201 North Market Street
Andrew D. Skale                         P.O. Box 1347
MINTZ LEVIN COHN FERRIS                  Wilmington, DE 19899
  GLOVSKY & POPEO                       (302) 658-9200
3580 Carmel Mountain Rd.,               jblumenfeld@morrisnichols.com
Suite 300                               mflynn@morrisnichols.com
San Diego, CA  92130
(858) 314-1500                          *Attorneys for Plaintiff*

July 29, 2022

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 4,690 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the brief. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)