# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNSTOPPABLE DOMAINS INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-948-CFC |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| GATEWAY REGISTRY, INC., ET AL, | ) | |
| | ) | |
| Defendants. | ) | |

**NON-PARTY SCOTT FLORCSK'S OPENING BRIEF IN SUPPORT OF
HIS MOTION TO INTERVENE AS DEFENDANT AND REQUEST TO
STAY RULING ON PLAINTIFF'S MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND MOTION FOR DEFAULT JUDGMENT</u>**

OF COUNSEL:

Eugene Rome
Sridavi Ganesan
ROME & ASSOCIATES, A.P.C.
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Tel: (310) 282-0690

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Carson R. Bartlett (#6750)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
cbartlett@potteranderson.com

Dated:  August 29, 2022          *Attorneys for Non-Party Scott Florcsk*
10316334 / 22478.00001

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................3

    A.     Domain Names and Blockchains ..........................................................3

    B.     Proposed Intervenor's Ownership of the .WALLET TLD on
        Handshake's Blockchain ......................................................................6

    C.     Unstoppable's Failed Attempts to Trademark .WALLET and
        WALLET..............................................................................................7

    D.     Proposed Intervenor's Communications with Plaintiff........................8

    E.     Plaintiff's Sham Litigation Against Defendants ..................................9

    F.     Procedural Posture..............................................................................11

III.   ARGUMENT......................................................................................12

    A.     Proposed Intervenor Has a Right to Intervene Under Rule 24(a).......13

        1.     *Timeliness*..................................................................................14

        2.     *Interest*.....................................................................................16

        3.     *Interest Impaired*.....................................................................16

        4.     *Inadequate Representation* ......................................................17

    B.     Alternatively, Proposed Intervenor Should be Permitted to Intervene
        Under Rule 24(b)................................................................................19

IV.    THE COURT SHOULD DEFER RULING ON PLAINTIFF'S MOTION
     FOR TEMPORARY RESTRAINING ORDER ...........................................20

V.     CONCLUSION ...........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*,
   309 F.R.D. 191 (D.N.J. 2015) ............................................................................14

*Benjamin ex rel. Yock v. Dept. of Public Welfare of Penn*,
   701 F.3d 938 (3d Cir. 2012) ............................................................................14

*Brody v. Spang*,
   957 F.2d 1108 (3d Cir. 1992) ..........................................................................18

*Clean Earth, Inc. v. Endurance Am. Ins.*,
   C.A. No. 15-6111, 2016 WL 5422063 (D.N.J. Sept. 2, 2016) .................... 16-17

*Crystallex Int'l Corp. v. PDV Holding Inc.*,
   C.A. No. 15-1082, 2019 WL 6785504 (D. Del. Dec. 12, 2019) .................13, 14

*F.T. Int'l, Ltd. v. Mason*,
   C.A. No. 00-5004, 2003 WL 21993859 (E.D. Pa. May 2, 2003) ......................14

*Harris v. Pernsley*,
   820 F.2d 592 (3d Cir. 1987) ............................................................................14

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
   C.A. No. 12-193, 2014 WL 4445953 (D. Del. Sept. 8, 2014) ..........................19

*Kleissler v. U.S. Forest Serv.*,
   157 F.3d 964 (3d Cir. 1998) ............................................................................16

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 (3d Cir. 1995) ......................................................................... 14-15

*Pa. Prison Soc'y v. Cortes*,
   622 F.3d 215 (3d Cir. 2010) ............................................................................12

*Pennsylvania v. President of the U.S.*,
   888 F.3d 52 (3d Cir. 2018) ..............................................................................18

*Tansey v. Rogers*,
   C.A. No. 12-1049, 2016 WL 3519887 (D. Del. June 27, 2016) ......................19

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)..............................................................................18

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016) .............................................................14

## STATUTES & RULES

15 U.S.C. § 1125(a) ...............................................................................19

28 U.S.C. § 1331 ....................................................................................19

28 U.S.C. § 2201 ....................................................................................19

28 U.S.C. § 2202 ....................................................................................19

Fed. R. Civ. P. 24 .............................................................................*passim*

Fed. R. Civ. P. 65(d)(2)........................................................................17

Scott Florcsk, owner of Wallet, Inc. and owner of the .WALLET Top-Level Domain ("TLD") on Handshake, Inc.'s blockchain ("Proposed Intervenor") moves this Court, pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative pursuant to Rule 24(b), for an order granting his Motion to Intervene in the above-captioned lawsuit.

Should the Court grant Proposed Intervenor's Motion, Proposed Intervenor requests that the Court defer ruling on Plaintiff Unstoppable Domains, Inc.'s ("Plaintiff" or "Unstoppable") Motion for Temporary Restraining Order and Motion for Default Judgment and Order Granting Permanent Injunctive Relief until after Proposed Intervenor has had the opportunity to file oppositions thereto and respond to the Complaint.

Should the Court deny Proposed Intervenor's Motion on the basis that the permanent injunction sought by Plaintiff does not encompass Proposed Intervenor's use and enjoyment of the .WALLET Top Level Domain ("TLD") on the Handshake blockchain or his rights thereto, Proposed Intervenor requests that this Court issue an Order so declaring.

## I. **INTRODUCTION**

Plaintiff is misusing this Court in an attempt to falsely assert trademark rights where none exist for the sole purpose of intimidating and eliminating its competition in the .WALLET domain-name market. Plaintiff knows full well that it does not hold

and *cannot* hold an enforceable trademark in the .WALLET/WALLET domain name Indeed, for years, Unstoppable has been trying to obtain a trademark for the .WALLET domain name, only be told by the United States Patent & Trademark Office ("USPTO") time and again that both .WALLET and WALLET (standing alone) cannot be registered as trademarks because ".WALLET" does not function as a service mark, and because "WALLET" is merely descriptive and ineligible for trademark protection. Yet, knowing its .WALLET/WALLET trademark applications are dead in the water, with the most recent WALLET application already initially refused by the USPTO, Unstoppable has brazenly launched a campaign to eliminate all other .WALLET domain names currently existing on separate and distinct blockchains on the basis of trademark infringement.[1]

Moreover, Plaintiff knows that Proposed Intervenor is and was the owner of the .WALLET TLD on the Handshake blockchain, yet Plaintiff filed the instant lawsuit against Proposed Intervenor's *registrar* instead, Defendant Gateway Registry, Inc. ("Gateway"), and the registrar's operator, Defendant James Stevens ("Stevens") (collectively "Defendants"). The benefit of this strategy for Unstoppable was two-fold: first, Unstoppable knew that Defendants did not have the financial means to defend against Unstoppable's deep litigation pockets, and that they would

---

[1] Additionally, the domain names are incapable of confusing consumers because they cannot be accessed without specific computer settings unique to each blockchain.

likely not litigate over a purported trademark to which Defendants had no ownership interest; and second, Unstoppable knew that if Defendant Gateway halted its registration of Second-Level Domains ("SLDs") for the .WALLET TLD on the Handshake blockchain, Proposed Intervenor's business would come to a screeching halt because Proposed Intervenor's business cannot operate without a registrar.

So far, Unstoppable's strategy has worked. Uninclined to expend money on lengthy and expensive litigation, Gateway has stopped operating its business, and Defendants have abandoned any efforts to defend themselves in this action. As a result, Proposed Intervenor must now search for a new registrar through which to sell and register .WALLET SLDs. Moreover, Unstoppable has moved to permanently enjoin Defendants *as well as those acting in concert with Defendants* (i.e., Proposed Intervenor) from selling or offering the .WALLET TLD on Handshake's blockchain, effectively adjudicating Proposed Intervenor's rights in his absence. Thus, Proposed Intervenor moves this Court to intervene in this case as a defendant to stand up against Unstoppable's anti-competitive conduct and defend his ownership rights in the .WALLET TLD.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Domain Names and Blockchains

Plaintiff Unstoppable is a Non-Fungible Token ("NFT") domain creator and blockchain developer. A blockchain is a database that can be used for different

purposes such as property rights registries or supply-chain tracking, but blockchains are commonly used to store transaction data for cryptocurrencies such as bitcoin. Blockchains are linked in a peer-to-peer network with sometimes thousands of nodes or servers spread across the entire planet. The nodes each contain a copy of the blockchain, and they communicate with each other to stay in sync, using a system of consensus to come to an agreement as to what the current, valid blockchain looks like. Thus, all nodes contain a matching copy of the blockchain. And in order to access or use a cryptocurrency such as bitcoin on a particular blockchain, it is necessary to have a means of accessing and/or spending the digital currency which sometimes comes in the form of an NFT domain. (Declaration of Scott Florcsk ("Florcsk Decl."), ¶ 3).

Currently, the Internet Corporation for Assigned Names and Numbers ("ICANN") controls 99% of the entire internet's naming layer. TLDs such as .com, .net, .org, etc., are given out by ICANN to countries and territories recognized by ICANN and to commercial buyers every 5-10 years following an application process and a $185,000 fee. Thus, it is close to impossible for the average person to ever own a TLD. However, a blockchain domain registration system is decentralized such that no single authority or entity dictates who can serve as the exclusive registry for a particular TLD. There are currently thousands of different blockchains in existence, and they all operate independently as separate ecosystems. (*Id.*, ¶ 4).

4

For example, Handshake is a public blockchain built from open-source code with all blocks and transactions viewable by anyone. Handshake allows anyone to create their own TLD on the Handshake blockchain. A consumer can use the domain to create a website or use the domain as a form of digital identification (oftentimes, a "wallet" for cryptocurrency). In order to access a Handshake website or domain, a user must recognize the Handshake blockchain as their name resolution authority. To do this, a user must either tell his or her computer to make Handshake Domain Name System ("DNS") servers their default DNS servers, or they must use an application (like a web browser) that makes Handshake's blockchain or DNS servers the application's method for resolving names. (*Id.*, ¶ 5).

Thus, if a user types "http://www.proofofconcept/" in a public library computer, the web browser will return an error because it cannot resolve that name (that name does not exist in ICANN). However, if the user configures the computer's DNS to point to Handshake's DNS servers (or nodes), or if the user employs a web browser that was made to resolve Handshake domains automatically, and then types in "http://www.proofofconcept/", the browser will bring up a website that was made by the owner of the "proofofconcept" domain on Handshake's blockchain. Thus, it is not possible for a consumer to confuse two SLDs from different blockchains because it is not possible for a computer to access two different blockchains at once. (*Id.*, ¶ 6).

5

**B.     Proposed Intervenor's Ownership of the .WALLET TLD on Handshake's Blockchain**

Proposed Intervenor is the owner of the .WALLET TLD on Handshake's blockchain which he won at public auction and which was minted on the blockchain on July 31, 2020. (Florcsk Decl., ¶ 1). In August 2020, Proposed Intervenor began diligently working to build a website to which the domain could resolve. Proposed Intervenor also added a DNS record for "www", rented a Virtual Private Server ("VPS"), and brought up the website http://www.wallet that was accessible to anyone using Handshake as their DNS. (*Id.*, ¶ 7). Over the next two years, Proposed Intervenor spent considerable time and resources building the application and infrastructure that would allow customers to register SLDs under the .WALLET TLD on Handshake's blockchain, and in November 2020, he registered his company, Wallet, Inc., in Washington state in case any other entity claimed that he lacked a right to use the .WALLET name. (*Id.*, ¶¶ 8, 9).

On July 4, 2022, .WALLET opened public registrations for SLDs on the Handshake blockchain. The registrations were performed by the domain name registrar, Gateway and Gateway's operator, Stevens, at a cost of $1.99 per name. (*Id.*, ¶ 10). Indeed, Proposed Intervenor's .WALLET domains proved to be popular, and by late July 2022 (less than a month from when it was available for registration), Gateway had registered over 4,000 .WALLET SLDs on the Handshake blockchain. (*Id.*, ¶ 11).

6

### C.     Unstoppable's Failed Attempts to Trademark .WALLET and WALLET

Unstoppable operates its own .WALLET TLD on a blockchain separate and distinct from Handshake's blockchain. Unstoppable spent 2020 trying, and failing, to acquire trademarks from the USPTO for various domain names, including: .x, .coin, .bitcoin, .888, .nft, .dao, .blockchain., .crypto, and .wallet. (Declaration of Sridavi Ganesan, ¶¶ 3, 7, Ex. A) Indeed, on February 24, 2020, Unstoppable submitted a trademark application to the USPTO to acquire a trademark for ".WALLET" (U.S. Serial No. 88/807,913). (*Id.*, ¶ 4.) However, on May 28, 2021, the USPTO denied Defendant's application because .WALLET as a TLD "does not function as a service mark to identify and distinguish applicant's services from those of others and to indicate the source of applicant's services." (*Id.*, ¶ 4, Ex. B.) The USPTO further denied Plaintiff's application on the basis that if, as Plaintiff claimed, consumers viewed .WALLET not as a TLD but as the same as "WALLET", the mark would be descriptive. (*Id.*) On December 9, 2021, the USPTO issued a Notice of Abandonment of the .WALLET trademark application because Unstoppable failed to provide a response to the USPTO decision before the deadline to do so. (*Id.*, ¶ 5).

As Plaintiff has informed the Court, on August 17, 2021, it submitted another trademark application to the USPTO (U.S. Serial No. 90/886,517) to acquire a trademark for WALLET (without "dot" preceding the mark). (*Id.*, ¶ 6). Critically

omitted from Plaintiff's Complaint, Motion for Temporary Restraining Order, and Motion for Default Judgment, however, was that on May 23, 2022 (two months **before** Plaintiff brought this action claiming to own trademark rights in .WALLET), the USPTO denied Plaintiff's application to trademark "WALLET" on similar grounds that it denied its application to trademark ".WALLET". (*Id*., Ex. C).

The USPTO stated that adding a "dot" in front of the WALLET mark would amount to a material change in the WALLET mark at issue.  It further denied Plaintiff's trademark application for WALLET because the word "wallet" is merely descriptive of the services relating to the sought after mark, as opposed to identifying the source of the service or product. (*Id*.). This should have come as no surprise to Plaintiff; it also tried to register crypto, bitcoin, dao, coin, bch, doge, blockchain, nft, and zil and all were refused by the USPTO. (*Id*. at. ¶ 7.)

The USPTO gave Plaintiff six months to respond to the denial of its application (November 23, 2022). As of the filing of this Motion, Plaintiff has not responded. (*Id*. at ¶ 6.)

### D.    Proposed Intervenor's Communications with Plaintiff

On July 6, 2022, Plaintiff contacted Stevens ordering him and Gateway to stop selling .WALLET SLDs on the Handshake blockchain. (Florcsk Decl., ¶ 12). Even though Plaintiff had already been denied its trademark application with the USPTO for fatal and non-curable flaws, Plaintiff improperly claimed that the .WALLET

8

domain name on Handshake's blockchain infringed Plaintiff's trademark of .WALLET on Plaintiff's blockchain. Gateway did not capitulate. (*Id.*) On July 8, 2022, Plaintiff served Gateway with a cease-and-desist letter via email, again ordering Gateway to stop selling .WALLET SLDs on the Handshake blockchain. (D.I. 1, ¶ 31). Again, Gateway refused. (*Id.*)

On July 8, 2022, Proposed Intervenor sent an email to counsel for Unstoppable explaining why Unstoppable had no right to order Proposed Intervenor's registrar to cease and desist selling .WALLET SLDs on Handshake's blockchain. Proposed Intervenor also indicated that as the owner of the .WALLET domain, Plaintiff's dispute was more properly a dispute with Proposed Intervenor, and that future correspondence regarding Unstoppable's alleged trademark should be directed toward him. (Florcsk Decl., ¶ 13, Ex. 1).  However, Unstoppable did not respond or even acknowledge receipt of the email, and instead, one week later, Unstoppable filed this action against Defendants. (D.I. 1).

### E.    Plaintiff's Sham Litigation Against Defendants

In its Complaint, Unstoppable has alleged trademark infringement against Defendants stemming from its application of WALLET with the USPTO (D.I. 1, ¶ 49), even though Unstoppable knows that its trademark applications have been denied, and that there is no way the USPTO will register trademarks for WALLET or .WALLET. (The word WALLET will always be descriptive, and .WALLET will

always be a TLD.)[2]   Moreover, Unstoppable asserts an Unfair Competition claim

pursuant to the Lanham Act, on the pretense of this purported federal trademark

right, *when it does not own and will never own a federal trademark in WALLET or*

*.WALLET*. (D.I. 1, ¶¶ 62-70).

Unstoppable further knows that there is no likelihood of confusion between

the .WALLET TLD on Handshake's blockchain and the .WALLET TLD on

Unstoppable's blockchain. Akin to shopping carts at a store, while two shopping

carts might look exactly the same in the abstract, if a Walmart shopping cart can

only be used in Walmart, and a Costco shopping cart can only be used in Costco, a

consumer could never be confused as to which shopping cart he or she is using while

shopping. If the consumer is in Walmart, he or she *must* be using a Walmart cart,

and if in Costco, he or she *must* be using a Costco cart. Thus, use of a TLD like

---

[2] In its Motion for Default Judgment and Order for Permanent Injunctive Relief, Plaintiff argues that its Complaint contains "sufficient factual allegations to support default judgment of trademark infringement and unfair competition" by citing to the registered trademark "XYZ" that was "registered for 'domain name registration services' for selling .XYZ domain names." (D.I. 18, n. 4). The implication seems to be that because XYZ received a trademark registration from the USPTO, somehow WALLET may still have a shot at registration. However, Plaintiff's reference to XYZ is intentionally misleading because XYZ, LLC is the name of the company that sells the TLDs. (*See* Declaration of Michael Flynn, in support of Motion for Default Judgment, Ex. 10).  The USPTO trademarked the (nondescriptive) company name of XYZ. WALLET is not Plaintiff's company name, and WALLET *is* descriptive of the services relating to the mark. Thus, Plaintiff's reference to the XYZ trademark is inapposite and lends no support for default judgment on trademark infringement and unfair competition.

.WALLET on Handshake's blockchain could never be confused with the .WALLET domain on Unstoppable's blockchain because a consumer cannot be on both blockchains at once. The context necessarily informs the consumer. (Florcsk Decl., ¶ 14). Nevertheless, even though Unstoppable knew at the time that it had no legitimate claims against Defendants – *or anyone* – for trademark infringement, Plaintiff filed suit.

Plaintiff's strategy is obvious. Plaintiff filed the instant action against Proposed Intervenor's *registrar*, because Unstoppable knew that Gateway did not have the financial means or interest in engaging in a lengthy and expensive legal battle with Unstoppable, an incredibly wealthy private firm backed by venture capitalists of considerable means. And just as Unstoppable predicted, Gateway could not afford the legal fees associated with defending the lawsuit, and instead closed its registry business on the last week of July 2022. Consequently, Proposed Intervenor, without a registrar, is now left unable to offer its .WALLET SLDs on Handshake's blockchain. (Florcsk Decl., ¶ 15).

F.     **Procedural Posture**

As is obvious from the docket in this case, Defendants have not made any move to defend themselves in this litigation. Defendants have not filed an answer or moved to dismiss the case. Plaintiff filed a Motion for a Temporary Restraining Order on July 7, 2022 (D.I. 7), and the Clerk entered a default against Defendants

on August 16, 2022 for Defendants' failure to plead or otherwise defend the claims against them. (D.I. 15).

On August 19, 2022, Plaintiff filed a Motion for Default Judgment and Order Granting Permanent Injunctive Relief against Defendants. (D.I. 18). However, in its request for relief, Plaintiff specified that the permanent injunction should apply not only to Defendants, but also, "other persons who are in active concert or participation with" Defendants. (*Id*., n.6; D.I. 17 [Proposed Order]). It is clear that Plaintiff is attempting to broaden the reach of the relief it seeks from this Court to encompass Proposed Intervenor's use of the .WALLET TLD on Handshake's blockchain. And should the breadth of Plaintiff's requested relief encompass Proposed Intervenor, it is imperative that he be permitted to intervene and defend his rights to the .WALLET TLD.

## III.   <u>ARGUMENT</u>

"Federal Rules of Civil Procedure 24(a) provides that, 'on timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.'" *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010) (alteration omitted) (quoting Fed. R. Civ.

P. 24(a)). Rule 24(b) provides in relevant part that "on timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

Proposed Intervenor meets both of these standards because the permanent injunction, which Plaintiff seeks and Defendants are not challenging, potentially encompasses Proposed Intervenor's property rights in the .WALLET TLD on Handshake's blockchain and could improperly enjoin Proposed Intervenor's use thereof.

### A.  Proposed Intervenor Has a Right to Intervene Under Rule 24(a)

The Third Circuit has articulated four elements that must be established to permit intervention pursuant to Rule 24(a)(2): "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Crystallex Int'l Corp. v. PDV Holding Inc.*, C.A. No. 15--1082, 2019 WL 6785504, at *5 (D. Del. Dec. 12, 2019) (quoting *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014)). "The polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Id.* at *5 (citation omitted).

As in most other circuits, courts in the Third Circuit "liberally construe Rule 24(a) in favor of intervention." *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192 (D.N.J. 2015) (citation omitted). The Third Circuit's approach favors "'pragmatism' and 'elasticity' over 'rigid rules' or 'narrow approaches;' it further 'favors intervention over subsequent collateral attacks.'" *Crystallex*, 2019 WL 6785504, at *5 (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970–71 (3d Cir. 1998)); *see also Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987) (noting that courts must "consider the pragmatic consequences of a decision to permit or deny intervention").

### 1. *Timeliness*

The Third Circuit considers three factors to determine whether a motion to intervene is timely: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (citation omitted). In addition, timeliness is ascertained from the complete set of circumstances, and the inquiry "is essentially a test of reasonableness." *F.T. Int'l, Ltd. v. Mason*, No. 00-5004, 2003 WL 21993859, at *1 (E.D. Pa. May 2, 2003). "The delay should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings." *Benjamin ex rel. Yock v. Dept. of Public Welfare of Penn*, 701 F.3d 938, 949-950 (3d Cir. 2012). "The mere passage

14

of time, however, does not render an application untimely." *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

Here, Proposed Intervener's Motion is timely as he brings this Motion a little more than a month after Plaintiff filed its July 19, 2022 Complaint against Defendants (D.I. 1). As such, Plaintiff cannot claim to be prejudiced by any delay.

Moreover, Proposed Intervener brought this Motion at the earliest possible chance when he learned that Defendants were not defending his interests, and that his rights may be affected by a potential permanent injunction. Plaintiff filed its Motion for Temporary Restraining Order on July 29, 2022 (D.I. 8), it filed its Request for Default on August 12, 2022 (D.I. 14), and the Clerk entered default on August 16, 2022 (D.I. 15), less than two weeks ago. By the time default was entered, it became clear to Proposed Intervenor that Defendants had absolutely no intention to defend the action. (Florcsk Decl., ¶ 16). And when Plaintiff filed its Motion for Default Judgment and Order Granting Permanent Injunctive Relief on August 19, 2022 (D.I. 17), Proposed Intervenor became aware of the breadth of Plaintiff's requested relief. It was at that time, a week ago, that Proposed Intervenor knew of the risks to his rights and promptly brought this Motion. (Florcsk Decl., ¶ 17). Thus, Proposed Intervenor's Motion meets the element of timeliness.

## 2.    *Interest*

The second element under Rule 24(a)(2) requires the prospective intervenor to have "an interest 'relating to the property or transaction which is the subject of the action' that is 'significantly protectable.'" *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). In determining whether the movant has such an interest, "pragmatism is a substantial factor that must be considered," and the Third Circuit has "relied on pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding." *Id.* at 970.

Clearly here, Proposed Intervenor has a direct interest in the property that is subject of the action. Proposed Intervenor *owns* the .WALLET TLD on Handshake's blockchain that is the subject of this dispute and the source of Plaintiff's claims of trademark infringement. (Florcsk Decl., ¶ 1). An order permanently enjoining Defendants "and those acting in concert with them" from "selling, offering, or otherwise promoting .WALLET domain names" necessarily implicates Proposed Intervenor's property interest and use thereof. (*See* D.I. 18). Thus, the element of interest in the litigation is also met.

## 3.    *Interest Impaired*

In assessing whether a proposed intervenor's interests will be impaired, courts in the Third Circuit look to the "practical consequences of denying intervention." *Clean Earth, Inc. v. Endurance Am. Ins.*, C.A. No. 15-6111, 2016 WL 5422063, at

16

*4 (D.N.J. Sept. 2, 2016) (citation omitted). The disposition of Plaintiff's lawsuit in Plaintiff's favor would adversely affect Proposed Intervenor's right to use and market Proposed Intervenor's .WALLET TLD if the relief sought by Plaintiff is interpreted by the Court to extend to Proposed Intervenor. Indeed, it is clear that Plaintiff's *intent* is to produce said result because Plaintiff called out the portion of Federal Rule of Civil Procedure 65(d)(2) extending an order for permanent injunction to those parties acting in concert or participation with Defendants. Thus, if Defendants continue on their course of failing to appear or defend themselves in this matter, and Plaintiff obtains an Order from this Court permanently enjoining Defendants *and persons acting in concert or participation with Defendants* from selling .WALLET SLDs on Handshake's blockchain, Proposed Intervenor may be unduly enjoined from using a TLD that he owns without the opportunity to defend his interests.[3] (Florcsk Decl., ¶ 18). As such, the impairment of interest prong has been met as well.

### 4. *Inadequate Representation*

The Third Circuit has held that the burden of making the showing that the interests of Defendants in this lawsuit do not adequately represent Proposed

---

[3] Should the Court determine that Proposed Intervenor's interests would not be impaired by a judgment in Plaintiff's favor (i.e., that entry of Default Judgement and an Order for Permanent Injunction does not implicate or extend to Proposed Intervenor), Proposed Intervenor requests that the Court issue an Order declaring as such.

Intervenor's interests should be treated as "minimal," and that a party seeking intervention as of right must only make a showing that the representation "may be" inadequate. *Pennsylvania v. President of the U.S.*, 888 F.3d 52, 60 (3d Cir. 2018) (citations omitted); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Representation is considered inadequate where, "although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests." *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992).

Here, there is little doubt that the interests of Defendants in this case diverge significantly from the interests of Proposed Intervenor in that Defendants *are not defending this lawsuit at all*. Neither Defendant has appeared and neither has responded to the Complaint, the Motion for Temporary Restraining Order, or the Motion for Default Judgment and Order Granting Permanent Injunctive Relief. Indeed, Gateway is no longer operating its business.

Moreover, Gateway has no protectable interest in the .WALLET TLD, and served merely as a registrar for onloading SLDs to Handshake's .WALLET domain. An order permanently enjoining Gateway from registering names on Handshake's .WALLET TLD does not impact Gateway in any significant way because .WALLET is but a small piece of Gateway's (once operating) business. However, as currently worded, the relief sought by Plaintiff in its Motion is enjoining Defendants and

18

potentially Proposed Intervenor from "selling, offering, or otherwise promoting .WALLET domain names." (D.I. 18, p. 20). For Proposed Intervenor, .WALLET is his whole business. Clearly here, Defendants' representation – or lack thereof – of Proposed Intervenor's interests is inadequate.

### B. Alternatively, Proposed Intervenor Should be Permitted to Intervene Under Rule 24(b)

Proposed Intervenor also satisfies the requirements of Rule 24(b), whereupon the Court may permit anyone to intervene who has filed a timely motion and who "has a claim or defense that shares with the main action a common question of law or fact." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 12-193, 2014 WL 4445953, at *2 (D. Del. Sept. 8, 2014) (quoting Fed. R. Civ. P. 24(b)(1)(B)). Permissive intervenors must demonstrate: "(1) an independent basis for subject matter jurisdiction, (2) a timely motion, and (3) a claim or defense that has a common question of law or fact with the primary litigation." *Id*. "[T]he court has broad discretion to permit intervention by anyone who 'has a claim or defense that shares with the main action a common question of law or fact,'" *Tansey v. Rogers*, C.A. No. 12-1049, 2016 WL 3519887, at *2 (D. Del. June 27, 2016) (quoting Fed. R. Civ. P. 24(b)(1)(B)).

Here, an independent basis for subject matter jurisdiction is easily met under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. §§ 2201/2202 (Declaratory Judgement Act); and unfair competition under 15 U.S.C. § 1125(a). As

discussed *supra*, Proposed Intervenor's Motion is timely. And the nonexistence of a valid or protectable trademark of the .WALLET TLD contains common questions of law and fact with Plaintiff's claims of "common law trademark infringement" and unfair competition. Thus, should the Court determine that Proposed Intervenor is not entitled intervention as of right, Proposed Intervenor requests that the Court grant permissive intervention.

## IV.  THE COURT SHOULD DEFER RULING ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Proposed Intervenor has a valid and viable right to market and sell the .WALLET TLD for use on the Handshake blockchain.  These rights are directly challenged by the pending Motion for Temporary Restraining Order and Motion for Default Judgment and an Order Granting Permanent Injunctive Relief. Further, as detailed *supra*, Proposed Intervenor has a series of meritorious defenses to the subject Motion for Temporary Restraining Order and Motion for Default Judgment and an Order Granting Permanent Injunctive Relief. As Gateway is no longer operating, there is no prejudice to Unstoppable from a delay in adjudication of these Motions. On balance, the prejudice to Proposed Intervenor would be intolerable as a grant of same would deprive him of his rights and business without a chance to assert a defense. For these reasons, Proposed Intervenor requests that the Court defer its ruling on both of Unstoppable's motions, at least until the Motion to Intervene is

ruled upon and, if granted, Proposed Intervenor has had an opportunity to file an opposition to the pending motions.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Proposed Intervenor requests that the Court grant his motion to intervene of right under Rule 24(a) or, in the alternative, to allow Proposed Intervenor to intervene under Rule 24(b). If the Court grants Proposed Intervenor's Motion, Proposed Intervenor requests that the Court defer ruling on Plaintiff's Motion for Temporary Restraining Order and Motion for Default Judgment and an Order Granting Permanent Injunctive Relief until after Proposed Intervenor has had the opportunity to file an opposition to Plaintiff's motions.

If the Court denies Proposed Intervenor's Motion on the basis that the temporary restraining order and permanent injunction sought by Plaintiff do not encompass Proposed Intervenor's use and enjoyment of the .WALLET TLD on the Handshake blockchain or his rights thereto, Proposed Intervenor requests that this Court issue an Order so declaring.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ Bindu A. Palapura*
  David E. Moore (#3983)
Eugene Rome                        Bindu A. Palapura (#5370)
Sridavi Ganesan                    Carson R. Bartlett (#6750)
ROME & ASSOCIATES, A.P.C.          Hercules Plaza, 6th Floor
2029 Century Park East, Suite 450  1313 N. Market Street
Los Angeles, CA 90067              Wilmington, DE  19801
Tel: (310) 282-0690                Tel:  (302) 984-6000
                                   dmoore@potteranderson.com
                                   bpalapura@potteranderson.com
                                   cbartlett@potteranderson.com

Dated:  August 29, 2022            *Attorneys for Non-Party Scott Florcsk*
10316334 / 22478.00001

22